## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

**KRISTIE METCALFE**                                                                 **PLAINTIFF**

**VS.**                                                   **CIVIL ACTION NO. 3:25-CV-324-HTW-ASH**

**MISSISSIPPI STATE SENATE**                                             **DEFENDANT**

## BRIEF IN SUPPORT OF MOTION TO DISMISS

The Mississippi State Senate submits this Memorandum of Law in Support of its Motion to Dismiss Kristie Metcalfe's Complaint. The Complaint, alleging a disparate pay claim under Title VII of the Civil Rights Act of 1964, must be dismissed because it fails to state a claim for which relief can be granted.

### Introduction

Title VII protects employees from the unlawful acts of their employers. It defines "employee" as "an individual employed by an employer," *but excludes from coverage* "any person chosen by [an elected official] to be on such officer's personal staff, or an appointee on the policy making level or *an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.*" 42 U.S.C. § 2000e(f) (emphasis added).

Metcalfe, a former Senate staff attorney, has sued the Senate for racially discriminatory pay under Title VII, a claim the Senate denies. Her claim is legally and factually untenable and should be dismissed for the following reasons:

First, Metcalfe was an immediate adviser to State Senators, and thus, exempt from Title VII. By her own admissions, she advised Senators on nearly every aspect of the legislative process, including the legal and constitutional powers of their office. Second, Metcalfe lost her independent cause of action by failing to intervene in a prior action, *United States v. Miss. State Senate*, No. 3:24-cv-712-HTW-ASH. Because she consciously waived intervention there, she cannot initiate a

second lawsuit seeking the same relief here. Third, her Complaint is untimely because she failed to sue within 270 days of filing her EEOC Charge. Fourth, laches bars her Complaint because she unreasonably and inexcusably delayed suing and that delay unduly prejudices the Senate. Fifth, even if she weren't exempt from Title VII, any claim related to tenured attorneys fails because she failed to timely file a charge related to them, and they are not similarly situated. Finally, the Senate invokes both the legislative and attorney-client privilege to the fullest extent of the law.

**Background**

## I.      The Senate Rules Committee

The Senate Rules Committee ("SRC") seats five senators and oversees Senate Legislative Services Office's ("LSO") operation, among other things. This oversight includes approving all Senate staff hires, like Metcalfe, and determining Senate staff attorney salaries. MISS. SEN. R. 65 (2)(d), (8); Ex. 1[1] at 000134, 000140. The SRC has full and exclusive authority over Senate employees, including its staff attorneys, and all such employees serve at the pleasure of the SRC. *Id*. at (2)(f).

## II.     Metcalfe's Hiring and Other LSO Personnel

The SRC hired Metcalfe as a Senate staff attorney in October 2011, a position for which there is no official job description. Doc. 1 at ¶ 4; Ex. 1 at 000108, 000155.

At that time, the LSO also employed Jeff Rosamond, Caryn Quilter, Larry Richardson, Bubba Neely, and Bob Davidson as Senate attorneys (collectively, the "Tenured Attorneys"). *Id.* at 000107–08, 000155, 000166, 000222. The SRC hired Metcalfe's alleged comparator, Ian Jones ("Jones"), on November 20, 2018, and he started on December 3, 2018. Doc. 1 at ¶ 11; Ex. 1 at

---

[1] The EEOC produced 447 pages of Metcalfe's Charge File in response to the Senate's request under the Freedom of Information Act. The Senate's Exhibit 1 is a composite of documents it relies on from Metcalfe's EEOC Charge file. The Senate has provided a complete copy of the Charge File it received to Metcalfe's counsel.

000012. Metcalfe claims that following Jones's hiring, she asked then-SRC chairman Terry Burton for a pay raise, but he denied her request. Doc. 1 at ¶ 11.

## III.    Metcalfe's Duties

As a Senate attorney, Metcalfe—in her own words and by her own admissions:

- Provided legal analysis to elected officials. Ex. 1 at 000142

- Performed drafting and legal services. Doc. 1 at ¶ 4.

- Offered legal counsel on legislative and parliamentary matters. Ex. 1 at 000143.

- Advised committee chairpersons throughout the legislative process. *Id.* at 000143.

- "drafted bills that were considered extremely important to the Governor or Lieutenant Governor's agenda, to the Senator requesting the bill, or to the constituents represented by those Senators." *Id.* at 000145.

- Provided legal services to all Senators. *Id.* at 000143.

- Provided legal services, counsel, and research to more than 10 committees. *Id.* at 000140, 000144.

- Drafted legislation for assigned committees at the request of any Senator. *Id.* at 000134.

- Researched legal issues for assigned committees at the request of any Senator. *Id.*

- Used legal principles to draft assigned legislation. *Id.*

- Served as legislative counsel to all Senators regarding matters related to assigned committees. *Id.*

- Advised Senators on procedural matters (e.g., how to make proper motions). *Id.*

- Attended committee meetings for assigned committees. *Id.*

- Worked closely with the committee chairpersons of assigned committees during the committee process. *Id.*

- Drafted bills and resolutions to be introduced by Senators. *Id.* at 000143.

- Drafted "legislation on a number of big bills[,] different senators come from different perspectives, so I do what I can to make them see the things they have in common." Ex. 2, Jackson Free Press Article (quoting Metcalfe).

3

Specifically, for the Agriculture-Committee Senators, she:

- Requested Attorney General's opinions on the interaction of state and federal laws. Ex. 1 at 000135.

For the Corrections-Committee Senators, she:

- Used "specialized knowledge of state parole laws." *Id.*

- Used "specialized knowledge of how parole eligibility interacted with the Mississippi Department of Corrections." *Id.*

- Responded to constituent phone calls. *Id.*

- Reviewed, summarized, and made recommendations on the disposition of every bill referred to the Corrections Committee. Noting "the chairperson of this committee required more assistance and guidance from [Metcalfe] than the chairs of [her] other committees." *Id.*

- Served as the lead person to answer questions from legislators, agency heads, and constituents about criminal justice reform legislation. *Id.*

For the Elections-Committee Senators, she:

- Used "specialized knowledge of the different laws governing state, county, and municipal elections." *Id.*

- Served as legal counsel to special Elections Committee that was appointed to decide challenges in the election of state Senators. *Id.*

- "[s]erved on multiple Elections Study Groups organized by . . . the chair of the Elections Committee." *Id.*

For the Housing-Committee Senators, she:

- Met with the Mississippi Home Corporation regarding housing trust funds. *Id.*

For the Municipalities-Committee Senators, she:

- Used "specialized knowledge of the various forms of municipal governments that operate in Mississippi." *Id.*

For the Public-Property-Committee Senators, she:

- Researched previous property transfers of public buildings and land. *Id.* at 000136.

24874479.9

And, for the Universities and Colleges Committee Senators, she:

- Worked closely with the Institution of Higher Learning's governmental relations official. *Id.*

- Used "specialized understanding of various state financial aid programs and the budgets for those programs." *Id.*

## IV.    Procedural History

On May 31, 2019, Metcalfe filed an EEOC Charge alleging racially discriminatory pay, among other things. *Id.* at 000012. Metcalfe requested a Right to Sue or Letter of Determination on August 29, 2019. *Id.* at 000142, 000147. And she voluntarily resigned from the Senate on October 22, 2019, effective November 15, 2019. *Id.* at 000102. On February 19, 2020, the EEOC requested information from the Senate and submission of additional evidence to support the Senate's position. *Id.* at 000153. In response, on March 6, 2020, the Senate explained that Metcalfe was exempt from Title VII, among other defenses. *Id.* at 000279–81.

On April 28, 2021, nearly two years after Metcalfe filed her Charge, the EEOC issued a letter of determination, totally ignoring the Senate's exemption defense, and requested the Senate conciliate. *Id.* at 000109–10. The parties attempted conciliation, but on July 30, 2021, the Senate notified the EEOC that conciliation was over, stating again that Metcalfe was exempt from Title VII. *Id.* at 000408–11. On August 12, 2021, the EEOC requested information relevant to the exemption, which the Senate promptly provided. *Id.* at 000297. Fourteen months later, on October 7, 2022, the EEOC notified the Senate that it was referring the matter to the Department of Justice. *Id.* at 000111–13. The Senate did not hear from DOJ until July 2023, almost a year later. On November 8, 2024, seventeen months after it first contacted the Senate, DOJ sued on Metcalfe's behalf. *United States v. Miss. St. Senate,* Civ. No. 3:24-cv-712-HTW-ASH, Doc. 1.

In January 2025, the Trump administration issued a litigation freeze to review cases filed in the Biden administration's waning days; this included DOJ's case against the Senate. *Id.* at Doc.

14-1. Later that month, the Senate moved to stay the case to allow the Trump DOJ time to review whether Metcalfe was exempt from Title VII. *Id.* at Doc. 15. In February 2025, this Court granted the Senate's (now unopposed and amended) motion to allow the federal government to review "whether the alleged discriminatee is exempt from Title VII of the Civil Rights Act of 1964." *Id.* at Doc. 22. Following its review, DOJ voluntarily dismissed its case against the Senate on April 15, 2025. *Id.* at Doc. 23. On that same day, DOJ issued Metcalfe a right to sue. Ex. 1 at 000114. Metcalfe sued on May 5, 2025. Doc. 1.

### Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Taking the allegations as true and viewing them in the light most favorable to the plaintiff, courts must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

When evaluating a motion to dismiss, courts may consider the facts in the complaint; documents attached thereto; documents referred to therein and central to its claims; and matters that may be judicially noticed under Federal Rule of Evidence 201. *Walker v. Beaumont Indep. School Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b).

Public records, like an EEOC file, may be judicially noticed. *Hamilton v. Promise Healthcare*, No. 23-30190, 2023 WL 6635076, at *5 (5th Cir. Oct. 12, 2023) (considered EEOC file); *Angelina v. Univ. of Miss. Med. Ctr.*, No. 3:14cv789-DPJ-FKB, 2015 WL 417846, at *1

(S.D. Miss. Jan. 30, 2015) (EEOC documents are public records and can be judicially noticed); *Martin v. Rainbow Casino*, No. 5:11-cv-142-DCB-RHW, 2012 WL 1883673, at *1 (S.D. Miss. May 22, 2012) ("It is well established that EEOC documents fall within the ambit of materials of which courts may take judicial notice.").

Too, this Court may judicially notice the Senate Rules, Senate Index Journal, Senate Meeting Minutes, government memorandums, and "court records entered by court personnel." *Wilborn v. Holmes Cnty.*, No. 3:22-cv-187-DPJ-FKB, 2023 WL 2335381, at *1 (S.D. Miss. Mar. 2, 2023) ("But 'federal courts take judicial [notice] of the laws, statutory and judicial of all the states[,]' … without converting a motion under Rule 12 into one for summary judgment.") (quoting *Budget Rent-A-Car Corp. v. Fein*, 342 F.2d 509, 514 n.11 (5th Cir. 1965); *Coleman v. Marion Cnty.*, No. 2:14CV185-DPJ-FKB, 2015 WL 5098524, at *1 n.1 (S.D. Miss. Aug. 31, 2015) (citing *Norris v. Hearst Trust,* 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.")).

"Judicial notice permits a judge to consider a generally accepted or readily verified fact as proved without requiring evidence to establish it." *U.S. v. Berrojo,* 628 F.2d 368, 369 (5th Cir. 1980); *see also Dine Citizens Against Ruining Our Env't v. Haaland,* 59 F.4th 1016, 1028 n.5 (10th Cir. 2023) ("Judicial notice is proper when a fact is beyond debate."). Courts may take such notice at any stage of the proceeding. *Id.* (citing FED. R. EVID. 201).

Because neither the Senate nor presumably Metcalfe dispute the job duties that she provided to the EEOC or third-party sources, like media outlets, the Court should judicially notice them. *See Gov't of Canal Zone v. Burjan,* 596 F.2d 690, 594 (5th Cir. 1979) ("There exists no comprehensive authoritative list of the types of sources 'whose accuracy cannot reasonably be questioned' and which, therefore, may be judicially noticed."); *see Cooper v. City of Indianapolis*, No. 1:10-cv-804, 2011 WL 5179290, *2 n.1 (S.D. Ind. Oct. 31, 2011) (it is "puzzl[ing for a party]

to challenge the authenticity of its own document, lest the [party] suggest it misrepresented itself to the EEOC").

This is especially true for her sworn statements submitted to the EEOC because Courts may judicially notice sworn statements contained in filed documents as they are not likely to be reasonably disputed. *Hogan v. NW Tr. Servs., Inc.,* No. 10-6027-HO, 2010 WL 1872990, at *3 (D. Or. May 7, 2010), *aff'd*, 441 F. App'x 490 (9th Cir. 2011). When submitting her Charge to the EEOC, Metcalfe declared "under penalty of perjury that the above is true and correct" and swore or affirmed that she read the Charge and that it was true to the best of her knowledge, information, and belief. Ex. 1 at 000012. The Court should also rely on Metcalfe's statements because, as a licensed attorney, she is subject to the Mississippi Rules of Professional Conduct and would be subject to discipline for dishonesty. MISS. R. PRO. C. 8.4.

Metcalfe's admissions in these documents should be accepted as an admission of a party opponent to expand upon paragraph 4 of her Complaint, which appears artfully pled to evade dismissal on the exemption. FED. R. EVID. 801(d)(2); *Rosen v. Brookhaven Capital Mgmt Co., Ltd.,* 194 F. Supp. 2d 224, 231 (S.D. N.Y. 2002) (considering admissions of party opponent at motion to dismiss stage); *Faulstick v. So. Tire Mart, LLC,* No. 2:13-cv-65-KS-MTP, 2014 WL 4055571, *5 (S.D. Miss. 2014) (considered statements in EEOC position statement under 801(d)(2)); *Pemberton v. Lloyd's Register Drilling Integrity Servs., Inc.,* 2016 WL 6820389, *3 (S.D. Tex. 2016) (allowing party to use position statement to demonstrate inconsistency with facts in motion).

**Argument and Authorities**

## I.    Metcalfe is exempt from Title VII.

Title VII excludes from its protections:

> [(1)]    Any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or

> [(2)]    any person chosen by such officer to be on such officer's personal staff[2], or

> [(3)]    an appointee on the policy making level,[3] **or**

> **[(4)]    an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.**

> The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision.[4]

42 U.S.C. § 2000e(f) (emphasis added); *Rutland v. Moore*, 54 F.3d 226, 230 (5th Cir. 1995) (noting four distinct exemptions). Metcalfe *admits* she was an attorney providing "consultation and legal analysis to elected officials." Ex. 1 at 000142.

### A.    Metcalfe was an immediate adviser.

In *Rutland,* the plaintiff alleged an ADEA[5] claim when he was not retained by the Attorney General following the Attorney General's Office acquiring the Mississippi Department of Human Services' legal department. *Rutland v. Office of Atty. Gen., State of Miss.*, 851 F. Supp. 793, 796–98 (S.D. Miss. 1994) (Wingate, J.) *aff'd sub nom. Rutland v. Moore*, 54 F.3d 226. If retained, the

---

[2] Metcalfe considered herself elected officials' personal staff. Ex. 1 at 000140. The EEOC asked: "Were you defined as the personal staff to the Senate?" She responded: "Generally, yes." *Id.*

[3] Although the Senate focuses on the immediate adviser exemption, Metcalfe is arguably also exempt as an appointee on the policy making level, and she admits to being elected officials' personal staff. The Senate reserves the right to raise these arguments later, if appropriate.

[4] Metcalfe was not subject to Mississippi's civil service laws. *See* Miss. Code Ann. § 25-9-107 (c)(i).

[5] "Because the personal staff exception in the ADEA is identical to the personal staff exemption found in Title VII, 42 U.S.C. § 2000e(f), courts construe the two exceptions consistently." *Montgomery v. Brookshire,* 34 F.3d 291, 294 (5th Cir. 1994). Courts often refer to Title VII exemptions collectively as the "personal staff" exemption. *See Rutland*, 54 F.3d at 230.

plaintiff would have served as a Special Assistant Attorney General within the Human Services Section, which would have been led by a section head, who would have been supervised by a deputy attorney general, who, of course, would report to the state Attorney General. *Id.* at 797–98. The Attorney General hired his Special Assistant Attorneys General to work at his will and pleasure. *Rutland*, 54 F.3d at 231.

Although through several degrees of separation, the Attorney General, an elected official empowered to act as the state's chief legal officer, "expect[ed], and receiv[ed], advice" from his Special Assistant Attorneys General. *Id*. This was "immediate" enough for the Fifth Circuit to affirm the district court's determination that the plaintiff was exempt from Title VII. *Id*. at 232 (noting an attorney "occupies a more confidential (or in the legal sense, privileged) relationship with the official" than even personal staff).

Inherent in the court's decision is the presumption that an attorney relationship is always "immediate," and it is unnecessary to determine "how 'immediate' is 'immediate'" when evaluating whether the exemption applies to government attorneys. *Id*.; *Laurie v. Ala. Ct. of Crim. App*, 88 F. Supp. 2d 1334, 1349 (M.D. Ala. 2000), *aff'd, Laurie v. Ala. Ct. of Crim. App.,* 256 F.3d 1266 (11th Cir. 2001) (relying on *Rutland v. Moore,* 54 F.3d at 230) (judge's staff attorney exempt); *see E.E.O.C v. Reno*, 758 F.2d 581, 584 (11th Cir. 1985) (assistant state attorney exempt); *Monce v. City of San Diego*, 895 F.2d 560, 561 (9th Cir. 1990) (deputy city attorney exempt); *Wall v. Coleman*, 393 F. Supp. 826 (S.D. Ga. 1975) (assistant district attorney exempt); *Teneyuca v. Bexar Cnty.*, 767 F.2d 148 (5th Cir. 1985) (assistant county criminal district attorney exempt).

Like Rutland, Metcalfe served as an attorney to an elected official: State Senators. And she, unlike Rutland, reported directly to those Senators, especially those on her assigned committees. Metcalfe was hired by, and could be fired by, elected officials—the SRC, much like the Attorney General in *Rutland*. *See* MISS. SEN. R. 65 (empowering the SRC to oversee Senate

personnel matters; ensure the LSO operates properly). Miss. Sen. R.  65(2)(a), (c), (d), (e), (f), (g), (8). The SRC had exclusive authority over her employment. *Id*. at (2)(f), (8).

And she admits that the Senators expected and received advice from her, just as the Attorney General expected and received legal advice from Rutland. *Compare Rutland*, 54 F.3d at 231, *with* Ex. 1 at 000110, 000134–36, 000143–44; Ex. 2 Jackson Free Press Article.

### B.    Metcalfe advised Senators on the exercise of the constitutional or legal powers of their office.

In *Laurie*, the United States District Court for the Middle District of Alabama considered whether staff attorneys were "immediate advisers" of the elected judge for whom they work, and thus, exempt from Title VII. *Laurie*, 88 F. Supp. 2d at 1349. In so considering, the court looked to the codified powers of the elected official, a judge empowered to handle appeals, and reasoned his staff attorneys were exempt as immediate advisers because they:

> Help [him] perform [his] constitutional and legal duties as elected officials. The Staff attorneys research the legal issues which arise in criminal appeals, provide legal advice to the judges on the merits of these issues, and write draft opinions for the review and signature for whom they work.

*Id*. (relying on *Rutland*, 54 F.3d at 230).

Here, the Senate is constitutionally and statutorily vested with legislative power. Miss. Const. art. 4. § 33; Miss. Code Ann. § 5-1-13. It also has the power to set its own Rules. Miss. Const. art. 4. § 55; *Gunn v. Hughes*, 210 So. 3d 969, 974 (Miss. 2017) (the legislature has the sole authority to establish its internal procedure).

The powers granted by the Senate's Rules properly belong to the Senate because "the Senate possesses inherent [constitutional] authority to direct the manner of their exercise." *Dye v. State ex rel. Hale*, 507 So. 2d 332, 345 (Miss. 1987) (citing Miss. Const. art. 4. § 55) (the power to appoint committees and refer bills, as established in Senate Rules belongs to the Senate).

These Rules grant Senators the power to establish and conduct standing committee meetings to review, debate, and act upon legislation within its jurisdiction; designate committee chairpersons; establish and conduct rules committee meetings; address the Senate; introduce bills and resolutions; vote on bills, resolutions, or measures; refer bills to committees; carry out and execute the Senate calendar; carry out Senate motion procedure; and introduce amendments to bills or resolutions, among other things.  MISS. SEN. R. 36–47; 66; 72; 73–91; 92–93; 94–96; 97–103A; 104–109; 112–129A.

Metcalfe admits she advised on nearly every aspect of this legislative process—the Senators' legal and constitutional duty. She conducted legal research necessary for legislation, *see* legislative power, MISS. CONST. art. 4. § 33, MISS. CODE ANN. § 5-1-13, MISS. SEN. R. 73–91, Ex. 1 at 000134, 000144;[6] she provided legal advice on legislative and parliamentary matters, *see* legislative power, *id.*, MISS. SEN. R. 72, 94–103A, 112–129A, Ex. 1 at 000110, 000134–35, 000143–44,  Doc. 1 at ¶ 4;[7] she drafted bills and resolutions, s*ee* legislative drafting power, MISS. SEN. R. 66, 73–93[8], Ex. 1 at 000134, 000143, 000145, Doc. 1 at ¶ 4; and beyond the comparisons to *Laurie*, Metcalfe also attended and advised at committee meetings, including on procedure and disposition of bills, *see* legislative committee power, MISS. SEN. R. 36–47, Ex. 1 at 000134–35; she used specialized knowledge to advise all Senators on matters related to her committee assignment, MISS. SEN. R. 36–42, Ex. 1 at 000134–36, 000144; she advised committee chairpersons, *see* legislative committee chairperson power, MISS. SEN. R. 38, 40, Ex. 1 at 000110, 000134, 000143; she drafted legislative amendments, *see* legislative amendment power, MISS. SEN. R. 104–09, Ex. 3, MUW Press Release, Ex. 1 at 000135; she advised on Senate procedural

---

[6] *Cf.  Laurie*, 88 F. Supp. 2d at 1349 (conducting legal research in criminal appeals).

[7] *Cf. id.* (providing legal advice to judge on criminal appeal issues).

[8] *Cf. id.* (drafting opinions in criminal appeal).

12

issues, s*ee* legislative procedural power, MISS. SEN. R. 72, 94–103A, 112–129A, Ex. 1 at 000134; she advised Senators during legislative negotiations, *see* legislative power, MISS. CONST. art. 4. § 33, MISS. CODE ANN. § 5-1-13, MISS. SEN. R. 73-91, Ex. 2, Jackson Free Press; she advised on and considered input of constituent inquiries, *see* legislative duty, MISS. CODE ANN. § 5-1-29, Ex. 1 at 000135, 000145; and she served as Senators' representative with other branches of government, *see* MISS. CONST. art. 1, § 1, Ex. 1 at 000135–36.

Metcalfe was an immediate adviser to Senators on the constitutional and legal powers of their office, and thus, exempt from Title VII. The Complaint should be dismissed on this ground alone.

## II.    Metcalfe cannot now bring an independent action.

Once the Department of Justice[9] sued,[10] Metcalfe lost her "independent cause of action." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 291 (2002); *E.E.O.C. v. Stone Pony Pizza, Inc.*, 172 F. Supp. 3d 941, 951 n.5 (N.D. Miss. 2016) ("when the EEOC files a suit, an individual's right to sue is cut off"). That is because Title VII was designed to prevent duplicative proceedings by granting a right to intervene. *Truvillon v. King's Daughters Hosp.*, 614 F.2d 520, 525 (5th Cir. 1980).

Metcalfe was required to intervene to protect her rights. *Id.* (acknowledging a charging party's obligation to intervene or lose their litigation rights when the EEOC's suit had no

---

[9] Title VII dictates that the DOJ must bring suit when the Respondent is a state or local government employee. 42 USCA § 2000e-5.

[10] "The Attorney General [shall issue a right to sue] where the Commission finds probable cause and conciliation fails, but the Attorney General *declines* to pursue the case." *Dougherty v. Barry,* 869 F.2d 605, 612 (D.C. Cir. 1989) (emphasis added); 29 C.F.R. § 1601.28(d)(1) ("[T]he Attorney General will issue the notice of right to sue when . . . the Attorney General has decided *not* to file a civil action") (emphasis added)) (other subsections held unconstitutional); *see* 22 USCA § 2000e-5(f)(1). DOJ's April 15, 2025, Right to Sue informed Metcalfe "[t]he Department of Justice has determined that it will *not* file a lawsuit based on the charge(s). The decision *not* to file a lawsuit is not a determination by the Department of Justice of whether your allegations of discrimination have merit. Therefore, you are hereby notified that you have a right to file a lawsuit." Ex. 1 at 000114–115 (emphasis added). But, DOJ *did* file suit, and she did not intervene.

procedural deficiencies); *McClain v. Wagener Elec. Corp.,* 550 F.2d 1115, 1119 (8th Cir. 1977) ("[her] remedy was by way of intervention" in that suit.); *U.S. v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 870 n.62 (5th Cir. 1975) (claimant had an "unconditional right to intervene in order to protect . . . her own interests in a . . . suit brought by the [DOJ], which otherwise cuts off the private party's right to sue under Title VII.").

That is because it "does no injustice to prevent an individual from prosecuting a second action seeking the relief the E.E.O.C. sought in a prior action, when the individual consciously waived intervention in that action." *Truvillon,* 614 F.2d at 525. Metcalfe, an attorney, knew of the DOJ's lawsuit, which sought the same remedy she seeks here, and chose not to intervene, although she had more than five months to do so (November 2024 to April 2025). After this Court ordered DOJ to evaluate whether Metcalfe was exempt from Title VII, DOJ dismissed the lawsuit. *United States v. Miss. St. Senate*, No. 3:24-cv-712-HTW-ASH, Doc. 22, 23. Any dissatisfaction with that decision to dismiss is unpersuasive. *See Truvillon,* 614 F.2d at 526 (discussing *Allegheny*, 517 F.2d at 870 n.62). She no longer has a right to litigate the claim, and it must be dismissed.

### III. This Complaint is untimely.

The "EEOC is statutorily required to notify the charging party within 180 days from filing of a charge 'if it or a state enforcement agency has not filed an action'; and 'a claimant has 90 days thereafter to file a complaint in federal court.'" *Ballesteros v. Travis Cnty, Tex.,* 2009 WL 10699878, *4 (W.D. Tex. 2009) (citing *Duron v. Albertson's LLC*, 560 F.3d 288, 290 (5th Cir. 2009)). In *Duron*, the court speculated that the "failure to file a suit or contact the EEOC within 270 days of filing a charge with the EEOC . . . *may* support a conclusion that an action is barred as untimely as a matter of law." *Duron*, 560 F.3d at 290 n.13. (emphasis added)

Although the Fifth Circuit has not reached that conclusion, other courts have explained that a claimant "has no more than 270 days to file their Title VII lawsuit" after filing a charge. *Webb*

*v. Providence Sch. Dep't*, No. 24-21 WES, 2025 WL 815233, *3 (D. R.I. Mar. 13, 2025) (citing 42 U.S.C. § 2000e-5(f)(1)) (dismissing a case as time barred because Plaintiff filed a lawsuit more than four years after events); *see Strouss v. Mich. Dept. of Corr.,* 75 F. Supp. 2d 711, 723 (E.D. Mich. 1999) (finding "Plaintiff, thus, had, at most, 270 days from the date of her . . . charge to prosecute her Title VII claims"). This Court should do the same.

## IV.    Laches bars this Complaint.

"Laches is founded on the notion that equity aids the vigilant and not those who slumber on their rights." *Nat'l Ass'n of Gov't Emps v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 708 (5th Cir. 1994) (applying laches to a private Title VII plaintiff). It is an affirmative defense that bars suit when a plaintiff's inexcusable or unreasonable delay unduly prejudices the defendant. *Retractable Techs., Inc. v. Becton Dickenson & Co*., 842 F.3d 883, 899–900 (5th Cir. 2016) (citing *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998)).

To prevail on this affirmative defense, the defendant must demonstrate: "(1) a delay asserting a right or claim; (2) that the delay was inexcusable; [and] (3) that undue prejudice resulted from the delay." *Retractable Techs*., 842 F.3d at 899–900 (quoting *Capece*, 141 F.3d at 205). The delay must unduly prejudice the defendant's ability to present an adequate defense, and when the relevant facts are not in dispute, district courts enjoy considerable discretion in deciding whether to apply this defense. *Nat'l Ass'n of Gov't Emps.*, 40 F.3d at 708.

### A.    An unreasonable delay occurred here.

To bar an action for laches, the court must find "not merely a delay, but an inexcusable, unreasonable, undue, or inordinate delay in asserting a claim." *EEOC v. La. Power & Light Co*., 1989 WL 35915, at *3 (citing *Save Our Wetlands, Inc. v. U.S. Army Corps of Eng'rs.*, 549 F.2d 1021 (5th Cir.), cert. denied, 434 U.S. 836 (1977)). Courts disagree over what period to consider when analyzing whether an inordinate delay exists, warranting application of laches to bar a Title

VII complaint.

Most courts consider the time between filing the EEOC charge and the filing the lawsuit. *See, e.g.*, *EEOC v. Massey-Ferguson, Inc.*, 622 F.2d 271, 277 (7th Cir. 1980) (finding 4 years and 9 months between filing EEOC charge and filing complaint was unreasonable); *EEOC v. Liberty Loan Corp.*, 584 F.2d 853, 857–58 (8th Cir. 1978) (finding 4 years and 4 months between filing EEOC charge and filing complaint was unreasonable); *EEOC v. Dresser Indus., Inc.*, 668 F.2d 1199, 1203 (11th Cir. 1982) (5 years 8 months unreasonable). Although Metcalfe filed her EEOC Charge on May 31, 2019, she did not file this lawsuit until May 5, 2025—almost 6 years later. This amount of time is plainly unreasonable under the majority view.

The Fifth Circuit, however, has indicated[11] that a court may consider only the time between the conciliation failure and filing suit. *See Fowler v. Blue Bell, Inc.*, 596 F.2d 1276, 1279 (5th Cir. 1979). There, the court stated that although laches may bar a Title VII complaint, the bar only arises if the plaintiff "delayed unreasonably after it has completed conciliation efforts." *Id.* at 1279. Conciliation efforts failed on July 30, 2021, but this lawsuit was not filed until May 5, 2025—nearly 4 years later. *See* Ex. 1 at 000411; Doc. 1. This is an unreasonable delay. *See EEOC v. La. Power & Light Co.*, No. 88-1147, 1989 WL 35915, *4 (E.D. La. Apr. 10, 1989) (finding a 2-year delay between failed conciliation and filing suit unreasonable).

Regardless of the period this Court considers, Metcalfe's delay is unreasonable, and laches applies. *See id.* (finding unreasonable delay without deciding which period was determinative).

B.    **The delay is inexcusable.**

Metcalfe filed her EEOC Charge in May 2019. Ex. 1 at 000012. Three months later, she

---

[11] Because this approach has been criticized as dicta, at least one court within this circuit has considered both the time between the filing of EEOC charge and filing of complaint *and* the time between failed conciliation efforts and the filing of complaint when considering whether the delay was unreasonable. *See La. Power & Light Co.*, 1989 WL 35915 at *4.

24874479.9

requested a right to sue[12] or a letter of determination from the EEOC. *Id.* at 000142, 000147. Metcalfe did not renew her request while the EEOC took nearly two years to ask the Senate to participate in conciliation. *See id.* at 000110. The parties attempted conciliation, but it failed in July 2021. *Id.* at 000411. Despite failed conciliation, Metcalfe did not renew her request for a right to sue letter.

In August 2021, the EEOC requested additional information regarding Metcalfe's exempt status, which the Senate promptly provided. *Id.* at 000297. The EEOC then waited more than a year (until October 2022) before referring the matter to DOJ. *Id.* at 000111–13. The Senate did not hear from DOJ until July 2023. There is no evidence showing Metcalfe prodded either the EEOC or DOJ for a right-to-sue letter during this nearly two-year lull.

Although DOJ ultimately sued in November 2024, Metcalfe did not intervene. *See generally* Civ. No. 3:24-cv-712-HTW-ASH. She did nothing to obtain her right to sue the five-and-a-half years between first requesting it and filing this suit. Evidenced by the timeline of events above, this delay is inexcusable. Although the EEOC administrative process is the "legislatively and judicially favored method of resolving Title VII claims," this method does not provide a plaintiff with "an absolute right to await termination of EEOC proceedings" prior to filing suit. *Jeffries v. Chicago Transit Auth*., 770 F.2d 676, 680–81 (7th Cir. 1985) (applying laches to Title VII claim where private plaintiff's reliance on EEOC administrative process "cannot excuse a delay of this length."); *Zurek v. Marshall Field & Co*., 19 F.3d 22 (7th Cir. 1994) (same).

---

[12] Upon request, Metcalfe had a right to a right to sue. 29 C.F.R. § 1601.28; *Pearsall v. Bank of Am. Corp.,* 2012 WL 1856511, *2 (E.D. Cal. 2012) ("a plaintiff has a right to a right to sue."). She did not further pursue that right after 180 days passed since her charge. *E.E.O.C. v. Hearst Corp.,* 103 F.3d 462, 466 (5th Cir. 1997); *Wilkes v. Wyo. Dept. of Emp't Div. of Labor Stds.,* 314 F.3d 501, 505–06 (10th Cir. 2002) ("Alternatively, the court found that Woods could have sought a right-to-sue notice on her Title VII claim 180 days after she filed it with the EEOC. *See Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 366 (1977) ("An aggrieved person unwilling to await the conclusion of extended EEOC proceedings may institute a private lawsuit 180 days after a charge has been filed.")). "Reasonable diligence also required the plaintiffs to request right-to-sue notices on or about the date plaintiffs became entitled to them"—here, November 27, 2019. *Id.* (citation omitted). Following her August 2019 request, Metcalfe never did anything to receive her right to sue letter.

This is especially true considering the Senate rejected conciliation in July 2021 because Metcalfe is exempt from Title VII, and the EEOC provided Metcalfe a list of employment discrimination attorneys—a clear suggestion the administrative process failed. *Id.* at 000408–12 (redacted). Metcalfe then did not correspond with the EEOC for nearly six months. *Id.* Then, more than a year later in October 2022, the EEOC officially notified Metcalfe its administrative process was complete, and the charge was referred to DOJ, yet Metcalfe did not pursue her right to sue. *Id.* at 000111. Her unreasonable delay after conciliation ended distinguishes this case from *Bernard v. Gulf Oil Co*., 596 F.2d 1249 (5th Cir. 1979), and *Fowler*, 596 F.2d 1276 (5th Cir. 1979).

Metcalfe's delay is more inexcusable than the delays in *Jeffries* and *Zurek*. Unlike those lay-plaintiffs, Metcalfe is a licensed attorney. *Cf. Richardson v. Delta Drayage Co.,* 433 F. Supp. 50, 52 (E.D. La. 1977) (acknowledging failure to demand right to sue may constitute inexcusable delay and declining to apply to lay person when no prejudice shown). Metcalfe had a "right" to demand a right-to-sue letter from the EEOC and file suit herself. *See* 42 U.S.C. § 2000e-5(f)(1). But she instead waited nearly six years after filing her EEOC Charge to file this lawsuit.

### C.    The Senate is unduly prejudiced by the delay.

Whether a plaintiff's delay prejudiced a defendant is analyzed on a "sliding scale," meaning, "the longer the plaintiff delayed in filing [its] claim, the less prejudice the defendant must show in order to defend on laches." *Sumrall v. Ensco Offshore Co*., No. 2:17-CV-48-KS-MTP, 2018 WL 2088761 at *8 (S.D. Miss. May 7, 2018). "[C]lassic elements of undue prejudice include unavailability of witnesses, changed personnel, and the loss of pertinent records." *Id.*

Although there have been numerous personnel changes in the years since Metcalfe filed her EEOC Charge, Senator Burton's unavailability prejudices the Senate most. Senator Burton chaired the SRC in 2018. Ex. 4, 2018 Index to Senate Journal. Senator Burton, who Metcalfe admits was critical to the personnel decisions relevant to this matter, suffers from health challenges

expected to make testifying difficult.[13] This prejudices the Senate. *See Nat'l Ass'n of Gov't Emps.*, 1992 WL 694422 at *8 (finding the defendant suffered undue prejudice where the unavailability of witnesses, because of death, illness or loss of memory, precludes defendant from presenting an effective defense).

Not only is the Senate's key witness in poor health, but the available witnesses' memories have understandably faded over the last six years. Because the SRC does not record reasons behind each wage determination it makes, the witnesses' memories of events are critical. Metcalfe knowingly and inexcusably delayed action in this matter. This delay unduly prejudices the Senate in defending itself.

## V.    Even if she were not exempt, any claim related to the Tenured Attorneys cannot succeed.

### A.    Metcalfe failed to file a timely charge related to the Tenured Attorneys and failed to exhaust her administrative remedies.

In her Complaint, Metcalfe alleges that her salary was "substantially less than what was paid to all the white attorneys" "[f]or the entire eight (8) year period in which Plaintiff was employed," and she seeks to recover "wages and benefits she would have received had she been a white person," including an alleged pay disparity between her and the Tenured Attorneys from her hiring date until she resigned. Doc. 1 at ¶¶ 6–10. Despite this allegation in her Complaint, Metcalfe's EEOC Charge addresses only Jones, not the Tenured Attorneys, and identifies July 30, 2018, as the first instance of discrimination. Ex. 1 at 000012.

Title VII claims are governed by the scope of the charge and the EEOC investigation that "can reasonably be expected to grow out of the charge of discrimination." *Pacheo v. Mineta,* 448 F.3d 783 789 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc*., 431 F.2d 455, 463 (5th

---

[13] *Former Senate Pro Tempore Terry Burton suffers stroke*, WJTV, (Jan. 24, 2019), https://www.wjtv.com/news/local-news/former-senate-pro-tempore-terry-burton-suffers-stroke/ (last visited June 13, 2025).

24874479.9

Cir. 1970)). In her August 2019 response to the Senate's position statement, Metcalfe admitted she was aware of the pay difference between her and the Tenured Attorneys and acknowledged the legitimacy of the justification (their tenure). Ex. 1 at 000142–47. She cited 2016 salaries as an example; confirmed she was familiar with how attorneys' salaries were determined prior to December 2018; admitted she was aware three other employees received the same raise as her; and credited her knowledge, at least in part, to salary reports submitted to the Mississippi State Auditor's Office that she apparently reviewed. *Id*. She knew, or at least knew how to find, the Tenured Attorneys' salaries, yet she filed no charge.

Such charge must have been filed within 180 days of the alleged wrong. 42 U.S.C. 2000e-5(e)(1). The filing period began to run when it was apparent or should have been apparent to a reasonable person that facts exist to support a Title VII charge. *Nilsen v. City of Moss Point, Miss.,* 621 F.2d 117, 121 (5th Cir. 1980). Metcalfe has long known these facts and did not file.

She cannot now rely on the timeliness of her charge involving Jones because "each paycheck at an allegedly discriminatory rate [is] a separate, discrete act of discrimination." *Niwayama v. Texas Tech Univ.,* 590 F. App'x. 351, 356 (5th Cir. 2014). The "discrete acts that fall within the statutory time period", here, Jones, "do not make timely acts that fall outside the time period," here, the Tenured Attorneys. *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113 (2002).

Metcalfe filed her Charge on May 31, 2019, for pay disparity between her and Jones.[14] Because Metcalfe knew a possible pay-disparity claim related to the Tenured Attorneys existed before December 2, 2018, and did "not ma[ke it] the basis for a timely charge . . . it is merely an

---

[14] If a claim for discriminatory hire or promotion is being made, which it appears it is not, it is untimely and should be dismissed. Metcalfe's Charge states she was aware that the SRC hired Jones on November 20, 2018, meaning the May 31, 2019, Charge was twelve days late as it relates to Jones's hiring, and it must be dismissed. U.S.C. 2000e-5(e)(1).

unfortunate event in history which has no present legal consequences," and it cannot be considered here. *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977).

A plaintiff must exhaust her administrative remedies before seeking judicial relief. *McClain v. Lufkin Indus., Inc.,* 519 F.3d 264, 273 (5th Cir. 2008). The administrative claim's scope governs a complaint's scope, and any lawsuit exceeding the EEOC claim's scope should be dismissed. *McClain*, 519 F.3d at 272 (citing *Vuyanich v. Republic Nat'l Bank,* 723 F.2d 1195, 1201 (5th Cir. 1984); *Evans v. U.S. Pipe & Foundry Co.,* 696 F.2d 925, 929 (11th Cir. 1983)). Because including the Tenured Attorneys now exceeds the Charge's scope, those claims should be dismissed for failure to exhaust.

### B.    Metcalfe cannot recover the damages she seeks.

A Title VII pay-disparity plaintiff may recover "back pay for up to *two years* preceding the filing of the charge," providing the "unlawful employment practices" that occurred during the filing period are "similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge." *Niwayama v. Texas Tech Univ.,* 590 F. App'x 351, 356–57 (5th Cir. 2014) (quoting 42 U.S.C. § 2000e–5(e)(3)(A)).

Metcalfe alleges "for the entire eight (8) year period in which Plaintiff was employed" she was paid "less than the lowest salaried white attorney," and she seeks to be "paid damages in the form of wages and benefits she would have received had she been a white person," which, based on her allegations, goes back to her hiring in December 2011. Doc. 1 at ¶ 10. So, even if Metcalfe could establish a disparate pay claim based on the Tenured Attorneys, she cannot recover beyond May 31, 2017—two years before her May 31, 2019, EEOC Charge.

24874479.9

## C.    The Tenured Attorneys are not proper comparators.

To establish a *prima facie* case[15] for disparate pay, Metcalfe must identify evidence showing a similarly situated employee of a different race was better paid. *Foster v. Ferrellgas, Inc.*, 834 F. App'x 88, 90 (5th Cir. 2020); *Taylor v. United Parcel Service, Inc.*, 554 F.3d 510, 523 (5th Cir. 2008). She cannot, as it relates to the Tenured Attorneys.[16]

"The similarly situated employee is known as a comparator," and a "variety of factors are considered when determining whether a comparator is similarly situated, including job responsibility, experience, and qualifications." *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 998 (5th Cir. 2022) (quoting *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018)). Metcalfe alleges a pay disparity claim based only on the Tenured Attorneys from her hire date until December 2018, when Jones was hired. Doc. 1 ¶¶ 4–10.

Although Metcalfe shared a job title with the Tenured Attorneys, other than the Director[17], that is insufficient to show they are similarly situated because the Tenured Attorneys had 19, 21, 24, 34, or 34 years' experience, respectively, with the Senate when Metcalfe was hired.[18] Ex. 1 at 000107–08, 000155, 000166, 000222; *Brown v. San Antonio Food Bank*, No. 23-50564, 2024 WL 1300286, at *3 (5th Cir. Mar. 27, 2024) (rejecting tenured employee with six years' experience as

---

[15] Metcalfe does not have to plead a *prima facie* case at this stage, but "to survive a motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states 'a claim to relief that is plausible on its face.'" *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

[16] At this stage, the Senate must accept the facts as pled, including that Jones is a comparator; however, the Senate reserves the right to present contrary evidence at a later stage.

[17] The Director is not an appropriate comparator because it is a different role with different responsibilities. *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017) ("This coworker, known as a comparator, must hold the "same job" or hold the same job responsibilities as the Title VII claimant."); *see* Ex. 1 at 000134 (Metcalfe admitting the Director is a different role with different responsibilities).

[18] Curiously, Metcalfe supports her disparate pay claim based on Jones, in part, because she had seven years tenure at the Senate when he was hired, *see* Doc. 1 ¶ 12, yet she neglects to mention or take that tenure into account as it relates to the Tenured Attorneys significantly longer tenure at the time of her hiring.

24874479.9

a proper comparator to alleged discriminatee with one year experience); *See McElroy v. PHM Corp.*, 622 F. App'x 388, 392 (5th Cir. 2015) (reasoning that a plaintiff's coworkers were not qualified comparators because, among other reasons, they were hired at different times); *Jackson v. Honeywell Int'l, Inc.*, 601 F. App'x. 280, 285 (5th Cir. 2015). A point with which Metcalfe agrees. *See* Ex. 1 at 000144 (acknowledging the Tenured Attorneys "were paid more based on their years of service with the Senate."); *See Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020) (affirming dismissal of race-discrimination complaint where the plaintiff "specifically alleged a non-racial reason for the termination.").

Metcalfe's failure to identify an appropriate comparator prior to December 2018, when Jones was hired, justifies dismissal of any disparate pay claim before that date. *See Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017) (failure to identify a similarly situated individual outside the protected class "alone justifies dismissal of a plaintiff's Title VII claim."); *see also Thornton v. Univ. of Texas Sw. Med. Ctr. Sch. of Med.*, No. 24-10594, 2025 WL 619166, at *4 (5th Cir. Feb. 26, 2025) (affirming 12(b)(6) dismissal where plaintiff "fail[ed] to plead facts plausibly alleging a *prima facie* case of discrimination" when the plaintiff failed to allege a similarly situated comparator was treated more favorably).

## VI. The legislative and attorney-client privileges apply.

The legislative privilege "covers all aspects of the legislative process." *La Union del Pueblo Entero v. Abbott*, 92 F.4th 310, 321 (5th Cir. 2024) (quoting *La Union del Pueblo Entero v. Abbott*, 68 F.4th 228, 231–32 (5th Cir. 2023) ("*Hughes*")). That includes communications between and amongst legislators, aides, assistants, and even external third parties because all are "part and parcel of the modern legislative procedure[]" and "occur[] within 'the sphere of legitimate legislative activity.'" *Id.* The privilege protects the "'many actions and documents' legislators take, review, or produce 'within the legislative process itself.'" *League of United Latin*

24874479.9

*Am. Citizens v. Abbott,* 708 F. Supp. 3d 870, 877 (W.D. Tex. 2023) (citing *Hughes*, 68 F.4th 228 at 235)). This privilege is "necessarily broad." *Id.* at 322.

The attorney-client privilege protects "All confidential communications between members of the Senate and staff attorneys." MISS. SEN. R. 141(2); *see* MISS. R. EVID. 502(b); *see also* MISS. R. PRO. C. 1.6. The privilege belongs to the Senate, as Metcalfe's client. *In re Grand Jury Subpoena,* 220 F.3d 406, 408 (5th Cir. 2000). "Even for allegations involving racial animus . . . the Supreme Court has held the legislative privilege stands fast" and does not yield to private plaintiffs or the United States. *League*, 708 F. Supp. 3d. at 882–84 (evaluating claim of racial animus in legislation).

The Senate fully invokes[19] both privileges. Metcalfe, as an attorney and a party to the legislative process, cannot disclose any communications involving legislators or the legislative process, including the SRC, which is comprised of Senators empowered to oversee various aspects of the legislative process. MISS. SEN. R. 65.

## Conclusion

Title VII's plain language compels dismissal here. Metcalfe is not an "employee" under Title VII. She is statutorily excluded from its protections as an "immediate adviser" to state Senators. And even if she weren't exempt, she fails to state a claim against the Senate upon which relief can be granted and cannot overcome equitable hurdles and privilege barriers.

Respectfully submitted, this the 13th day of June, 2025.

---

[19] As this Court is aware, the Senate has extensively litigated its legislative privilege. *See, e.g.*, *Jackson Mun. Airport Auth. v. Harkins et al.*, No. 3:16-cv-00246-CWR-ASH.

MISSISSIPPI STATE SENATE


BY: _s/ Armin J. Moeller, Jr._
          Attorney for Mississippi State Senate


Armin J. Moeller, Jr. (MSB 3399)
Russell Dumas (MSB 105310)
BALCH & BINGHAM LLP
188 East Capitol Street
Suite 1400
Jackson, MS 39201
Telephone: (601) 961-9900
Facsimile: (601) 961-4466
amoeller@balch.com
rdumas@balch.com

Lindsay Thomas Dowdle (MSB 102873)
Will Ivison (MSB 104213)
Mississippi Attorney General's Office
550 High Street
Suite 1100
Jackson, MS 39205
Telephone: (601) 359-3020
Facsimile: (601) 359-2003
Lindsay.dowdle@ago.ms.gov
Will.ivison@ago.ms.gov


## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon the following CM/ECF participant(s) electronically on this the 13th day of June, 2025:


_s/ Armin J. Moeller, Jr._
Of Counsel

24874479.9